IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MICHAEL V. SUMPTER, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-1864-CO |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

MARTIN R. COHEN
P.O. Box 1229
4040 Douglas Way
Lake Oswego, OR 97035

LINDA S. ZISKIN
3 Monroe Parkway, Suite P
Lake Oswego, OR 97035

      Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

THOMAS M. ELSBERRY
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

COONEY, Magistrate Judge:

      Plaintiff Michael Sumpter seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

      For the following reasons, the Commissioner's motion for remand is GRANTED.

## BACKGROUND

      Born in 1960, Sumpter completed high school and two years of college.  Tr. 111,[1] 130. Sumpter filed for DIB on June 17, 2001, contending he has been unable to work since May 2000. Tr. 111-13.  Sumpter alleges disability due to "an injured neck/spine, causing limited movement, vertigo and dizziness."  Tr. 124.  Between 1989 and 2000 Sumpter worked as a security firm manager, a security chief, and a sales manager for a chemical recycling business.  Tr. 125, 159.

      Sumpter's application was initially denied.  Tr. 43-44.  A hearing was held before an Administrative Law Judge (ALJ) in February 2003.  Tr. 1033-78.  On April 25, 2003 the ALJ issued an unfavorable decision.  Tr. 50-59.  The Appeals Council subsequently vacated the ALJ's decision and remanded the case to the ALJ for further proceedings.  Tr. 92-93.

      A second hearing was held October 19, 2004.  Tr. 1079-1129.  The ALJ again found

---

[1] Citations "Tr." refer to the indicated pages in the official transcript of the administrative record, filed with the Commissioner's Answer April 24, 2006 (docket #7).

2 - FINDINGS AND RECOMMENDATION

Sumpter not disabled on December 18, 2004. Tr. 18-33.   The Appeals Council denied review of this decision and Sumpter presently appeals.  Tr. 7-9.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Sumpter challenges the ALJ's evaluation of the evidence and his conclusion at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(I).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments.  20 C.F.R. § 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four.  If the claimant can perform such work, he is not disabled.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of establishing functional limitations rests upon the claimant.  If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity.  *Yuckert*, 482 U.S. at 141-2; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

The ALJ found Sumpter's "severe" impairments included degenerative disc disease of the cervical spine, osteoarthritis of the right ankle, depression, and post-traumatic stress disorder (PTSD).  Tr. 32.  The ALJ made an extensive RFC assessment:

> I find the claimant has the residual functional capacity for "less than the wide or full range" of Sedentary exertion, with a "sit, stand, and walk option, allowing him to change positions among the three activities in intervals of 20 minutes.  I also find that the claimant has Postural, Manipulative, Environmental and Vocational non-exertional limitations...
>
> Exertionally, I find the claimant can "lift and carry" no more than 10 pounds, at any time.  He can "sit" up to 6-hours (cumulatively, not continuously), in an 8-hour workday with normal breaks.  He must have the option to change positions, in 20-minute intervals, between sitting, standing, and walking.  His push/pull exertional capacities, in his upper and lower extremities, are limited to the weight level of no more than 10-pounds at any time.
>
> His Postural non-exertional limitations are that he can "occasionally" climb stairs or equivalent handicap ramps; he is "precluded" from any climbing of ropes, ladders, or scaffolds.  He does have the capacity to "occasionally" perform "balancing,

bending, stooping, kneeling, crouching and crawling." The
claimant's cervical spine "moderate" degenerative changes, causing
"mild-to-moderate"pain in his shoulders requires allowance of a
Manipulative non-exertional limitation for no more than
"occasional" overhead reaching...

I also find he has Environmental non-exertional limitations,
"precluding" him from working around "hazards," such as working
at unprotected heights or around machinery with exposed moving
parts.  Vocationally, I liberally grant that the claimant is limited to
no more than "Simple, Routine, Repetitive Work, "due to his
alleged pain, depression and medications.

Tr. 28-29.

The ALJ found that this RFC did not preclude Sumpter from performing a significant

number of jobs in the national economy.  Tr. 32.  Accordingly, the ALJ found Sumpter not

disabled at any time through the date of his decision.  Tr. 33.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d

1190, 1193 (9th Cir. 2004).  This court must weigh "both the evidence that supports and detracts

from the Commissioner's conclusion."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

(citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)).  The reviewing court "may not

substitute its judgement for that of the Commissioner."  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the

Commissioner's interpretation is a rational reading.  *Magallanes*, 881 F.2d at 750; *see also*

*Batson*, 359 F.3d at 1193.

<u>**DISCUSSION**</u>

Sumpter claims the ALJ failed to comply with the Appeals Council's remand order because he made numerous factual errors.  Sumpter specifically claims the ALJ improperly rejected opinions of treating and examining physicians, improperly evaluated lay witness testimony, and relied upon unsupported VE testimony.  The Commissioner concedes that the ALJ erred in evaluating Sumpter's reported work activities and in evaluating a treating psychiatrist's opinion.

**I.      Credibility**

Sumpter suggests the ALJ made factual errors regarding his uncle.  Pl. Opening Br. 28.  Sumpter also suggests the ALJ mischaracterized his efforts to paint his house and improperly rejected his testimony regarding his dizziness.  Pl. Opening Br. 30.  Though Sumpter does not directly challenge the ALJ's credibility decision, these allegations are components of that decision and will be discussed as such.

   ***a.      Credibility Analysis***

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id*.

### b.    *Contradictory Statements Regarding Work History*

Sumpter alleges the ALJ misconstrued his statements regarding his work history.  The

ALJ stated:

> At his first hearing, the claimant vaguely testified that he was
> working for his uncle at KMF, and that he only reported detailed
> work and earnings to protect his uncle for tax purposes.  In
> summary, he alleged that his earnings were a "gift" or a "loan."
> His testimony regarding his work at KMF was so convoluted that
> he appeared unsure about whether he worked, got a loan or
> received a gift, from an uncle he did not name.
>
> I have extensively reviewed the file, and I find no evidence from an
> uncle, or from anyone else at KMF, to explain that he looked like
> he was working, when he was not working, or something to that
> effect.  In fact, I find only one reference of him working for "his
> uncle's company" dated August 24, 2000, by Dr. Carr, and a
> passing reference of "uncle sick with brain surgery, "dated May 10,
> 2001 (Ex. 7F/pgs. 88 and 168).

Tr. 20.

The record contains a June 2003 letter from Wade Sumpter, Sumpter's uncle who ran the

KMF company cited by the ALJ above.  Wade Sumpter's letter states:

> Michael actually worked for me for a period of 2-3 weeks before I
> had to tell him it wasn't going to work out.  However, I still wanted
> to help him, since I knew that he wanted to be able to contribute to
> his family's support... Because he was my nephew and because I
> wanted to help him and his family, I kept him on my "payroll" for
> several months and continued to pay him the salary I had offered
> when he was first hired.  Michael was reluctant to accept this at
> first, but I convinced him it was for his family's sake.  After six
> months, Michael felt he could not accept any more help, and
> returned my last check to me.  I know Michael found it very
> embarrassing to accept money from his relatives in return for no
> work.

Tr. 188-89.

7 - FINDINGS AND RECOMMENDATION

Wade Sumpter's testimony regarding the claimant's limitations is properly addressed as lay witness testimony, discussed below. However, inclusion of the above statement in the record does not support the ALJ's determination that "I have extensively reviewed the file, and I find no evidence from an uncle, or from anyone else at KMF, to explain that he looked like he was working, when he was not working, or something to that effect." Tr. 20. For this reason, the ALJ's finding regarding Sumpter's work activity at KMF is not properly based upon the record and should not be sustained. *Batson*, 359 F.3d at 1193.

The defendant's motion for remand for further development of Sumpter's work history and substantial gainful activity regarding his credibility should be granted. Sumpter's subsequent statements suggesting that any discussion of Sumpter's work history is "waived" is illogical in light of Sumpter's initial argument. Pl. Reply Br. 5.

### c.      Contradictory Statements Regarding Activities of Daily Living

Sumpter finally challenges the ALJ's finding that he "painted the house" eight months after his alleged onset date. Tr. 27. The hearing transcript shows that Sumpter testified that he "did a little painting when we first bought the house," which was "about two years ago." Tr. 1055. Sumpter subsequently stated, "I did some edging work or whatever." *Id.* The ALJ's finding that Sumpter "painted his house" is consistent with this testimony. Sumpter suggests that he performed "edging" work only, and that the "the ALJ makes it sound like Plaintiff painted his whole house." Pl. Opening Br. 30. If two interpretations of the record are plausible, this court must affirm the ALJ's interpretation of the evidence. *Magallanes*, 881 F.2d at 750. The ALJ's reference to Sumpter's painting activity should be sustained.

Sumpter does not challenge the ALJ's citation of his activities of daily living in his

credibility analysis. The ALJ cited Sumpter's testimony that he awakens before 7 a.m., prepares breakfast for his son, performs physical therapy exercises, naps, does laundry and shopping, and collects his son from school. Tr. 27, 1053, 1054. The ALJ subsequently noted Sumpter's previous reports that he could not help with housework and shops only occasionally. Tr. 27, 150-151. The ALJ's analysis of this contradictory testimony is based upon the record and is sustainable. *Batson*, 359 F.3d at 1193.

However, the ALJ also noted that Sumpter "denied" taking naps during the day. Tr. 27. This finding is not supported by Sumpter's activities of daily living reports and clearly contradicts Sumpter's hearing testimony. Tr. 149-155, 1053-1055. This finding is not supported by the record and should not be sustained.

### d.       *Sumpter's Symptom Testimony*

The ALJ found that Sumpter's symptom testimony is not consistent with the medical record. Tr. 27. The ALJ noted Sumpter's allegation that he cannot focus his eyes, cannot concentrate, and experiences pain in standing and dizziness. Tr. 27. The ALJ found this testimony contradicted by Sumpter's normal vision test, and observed that the medical record regarding Sumpter's dizziness shows no etiology or formal diagnosis for this complaint. *Id.* The ALJ cannot base his credibility finding upon such an observation, but the ALJ may note inconsistencies between a claimant's report and the medical record as one of several credibility factors. *Smolen*, 80 F.3d at 1282, 1284, *see also* Social Security Ruling (SSR) 96-79 at *6 (available at WL 374186).

The medical record reflects Sumpter's reports of dizziness and blurred vision. Tr. 292, 322, 343, 392, 398, 399, 403. The ALJ is correct in finding that the record does not ascribe these

9 - FINDINGS AND RECOMMENDATION

symptoms to a diagnosis within the relevant time period.  Sumpter points to a remote diagnosis based upon his report to physicians, and does not point to any other medical evidence supporting this symptom testimony.  Pl. Opening Br. 30.  Sumpter was additionally admitted to the hospital for dizziness, though he received no explanatory diagnosis.  Tr. 422, 4234.  Upon remand, the ALJ should consider Sumpter's symptom testimony if he finds Sumpter credible under a general credibility analysis as discussed above.  This court notes that once an impairment is established, the claimant is not required to produce medical evidence corroborating the severity of associated symptom testimony.  *Smolen*, 80 F.3d at 1282.

Sumpter submits the ALJ erroneously rejected his symptom testimony regarding his medication side effects.  Sumpter does not point to any medical evidence supporting his side effect testimony.  Pl. Opening Br. 27-28.  However, if an ALJ finds a claimant credible, and the claimant shows an underlying impairment, the ALJ must consider symptom testimony, including medication side effects. SSR 96-79 at * 3, *Smolen*, 80 F.3d at 1282.  Upon remand, the ALJ should address this testimony under the proper legal standards.

The ALJ's finding regarding Sumpter's alleged concentration difficulties is not based upon the record.  Examining neurologist Dr. Campbell administered psychological testing showing impaired memory and concentration and assigned Sumpter a diagnosis of "toxic encephalopathy."  Tr. 988-991.  Upon remand, the ALJ should consider Sumpter's cognitive symptom testimony in light of Dr. Campbell's clinical notes.

This court does not sustain the ALJ's overall credibility finding for the reasons above.  However, credibility determinations are the province of the ALJ.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Upon remand, the ALJ should revise his credibility analysis to include

review of lay witness testimony regarding Sumpter's work history.  The ALJ should correctly

consider Sumpter's testimony regarding his activities of daily living.  After conducting this

analysis, the ALJ should also reconsider Sumpter's symptom testimony under the proper legal

standards and in light of the appropriate medical record.

## II.    Medical Source Statements

Sumpter alleges the ALJ's reading of the medical record incorporated factual errors

regarding his drinking, counseling attendance, and medication side effects.  Pl. Opening Br. 29.

Sumpter also claims the ALJ failed to properly evaluate the opinions of his treating psychiatrist,

Dr. Smith, his treating physician, Dr. Carr, and improperly relied upon a medical expert, Dr. Pati.

Each source is addressed in turn; this discussion incorporates the ALJ's alleged factual errors.

### a.    *Treating Psychiatrist Dr. Smith*

Sumpter submits the ALJ improperly considered the opinion of his treating psychiatrist,

Dr. Smith.  Pl. Opening Br. 32.  The Commissioner concedes that the ALJ did not properly

evaluate Dr. Smith's March 2004 opinion, but provides no explanation for her concession.

Defendant's Brief, 7.

The ALJ cited Dr. Smith's treatment notes, including her intake evaluation and the

discrepancy between her initial November 2001 opinion that Sumpter met the diagnostic criteria

for post-traumatic stress disorder (PTSD), her subsequent redaction of that diagnosis upon the

same date, and her November 2003 finding that Sumpter again met PTSD diagnostic criteria.  Tr.

23, 333, 377, 749,750, 818, 840, 841.  The ALJ noted that Dr. Smith restricted her November

2003 findings and PTSD diagnosis to a period "at this time."  *Id.*  These findings are based upon

the record and should be sustained.

The ALJ also noted Dr. Smith's Mental Health Residual Functional Capacity form, completed March 11, 2004. Tr. 24, 849-57. Dr. Smith stated that Sumpter suffered from significant medication side effects. The ALJ found no support for this endorsement in Dr. Smith's treatment notes. *Id.* Dr. Smith's records refer once to Sumpter's medication side effects. Tr. 375. Dr. Smith subsequently found that Sumpter's medication regime presented no significant side effects. Tr. 297, 311, 335, 608, 637, 656, 664, 676, 689, 744, 760, 767, 783, 797, 806, 819, 820. An ALJ may appropriately reject an aspect of a physician's opinion that is "brief, conclusory, or inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the record supports Dr. Smith's submission that Sumpter experienced side effects on one occasion, but the record does not support any finding of ongoing disturbance from side effects. The ALJ's finding regarding Dr. Smith's report of side effects is based upon the record and should be sustained.

Dr. Smith's notes also show that Sumpter reported abstaining from alcohol on at least eight occasions. Tr. 311, 333, 335, 338, 359, 406, 751, 755. The record does not reflect the ALJ's inference that Sumpter abused alcohol. This finding should not be sustained.

Finally, the ALJ noted that Sumpter denied any previous counseling to Dr. Smith. Tr. 23. Sumpter contends this is a "factual error" in light of earlier counseling records with another healthcare provider. Pl. Opening Br. 29. The record shows that Sumpter twice reported previous counseling to Dr. Smith. Tr. 359, 369. The ALJ's finding that Sumpter reported no previous counseling is not supported by the record and should not be sustained.

For the reasons above, the ALJ's analysis of Dr. Smith's opinion is flawed. Her opinion is

supported in part by the record. The supported aspects of Dr. Smith's opinion should be credited

should Sumpter be found credible upon remand. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th

Cir. 2000). However, this court notes that an ALJ is not required to credit a physician's opinion

based upon a claimant's report if the claimant is not credible. *Tonapetyan*, 242 F.3d at 1149.

  **b.**  *Treating Physician Dr. Carr*

  Sumpter suggests the ALJ failed to mention his treating physician's opinion that he was

unable to work. Pl. Opening Br. 34. Sumpter suggests this court should credit Dr. Carr's opinion

and award benefits because the ALJ omitted discussion of Dr. Carr's disability opinion.

  The ALJ cited Dr. Carr's records. Tr. 21, 22. The file contains additional records from

Dr. Carr dated March 2005, well after Sumpter's October 2004 hearing. Tr. 1026-1032. Dr.

Carr's disability opinion is included in this late submission.

  In March 2005 Dr. Carr noted Sumpter's fibromyalgia and accompanying "anxiety/panic"

attacks and wrote, "I think these current conditions preclude [Sumpter] from being able to work

full or part time basis [sic]." Tr. 1031. This opinion was created and submitted to the record

after Sumpter's October 2004 hearing. *Id*. This court may credit improperly rejected evidence,

but it is illogical to fault the ALJ for failing to review evidence created after his hearing.

*Harman*, 211 F.3d at 1180, *see* also *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Dr. Carr's

disability opinion should not be credited under such a standard.

  Generally, the Commissioner is not required to consider diagnoses submitted after the

record closure. *Mayes v. Massinari*, 276 F.3d 453, 462 (9th Cir. 2001), *Tidwell v. Apfel*, 161 F.3d

599, 601 (9th Cir. 1998). However, an ALJ may consider a retroactive diagnosis if it relates to an

established impairment supported by the record within the relevant time period. *See Tidwell*, 161

F.3 at 601.

The record shows Sumpter received an "unproved" fibromyalgia diagnosis from previous healthcare providers in 1992. Tr. 225-226. This finding is reflected at least 28 times in Sumpter's VA record. Tr. 291, 315, 321, 342, 387, 410, 418, 427, 430, 618, 628, 640, 646, 650, 707, 733, 739, 747, 768, 808, 811, 823, 912, 924, 938, 947, 983. In his December 2004 decision the ALJ that his previous decision "clearly does not reflect any diagnosis anywhere in the record or decision of fibromyalgia." Tr. 22. This inference is not based upon the record and should not be sustained. Upon remand the ALJ should consider Dr. Carr's opinion regarding Sumpter's fibromyalgia.

### c.    *Examining Psychologist Dr. Sacks*

Sumpter suggests the ALJ erroneously omitted the opinion of examining psychologist Gary Sacks, Ph.D. Pl. Opening Br. 34. Sacks conducted a PTSD evaluation in April 2004. Tr. 885-887. After a clinical interview and evaluation, Dr. Sacks assessed Sumpter with "chronic, severe" PTSD and an "associated panic disorder." Tr. 887. This opinion corroborates Dr. Smith's PTSD finding, discussed above. This court notes that the ALJ relied upon Dr. Sacks' opinion in his questioning the medical expert, discussed below. The ALJ should consider this opinion in his decision upon remand.

### d.    *Medical Expert Dr. Pati*

Sumpter finally suggests the ALJ erred in relying upon the opinion of Dr. Pati, a medical expert testifying at Sumpter's hearing. Sumpter submits, "when the opinion of the medical advisor is the only opinion which contradicts the examining and treating doctors' opinions, the examining and treating doctors' opinions are considered uncontradicted, because the medical

advisor's opinion is not considered to be substantial evidence."  Pl. Opening Br. 35, citing

*Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984).

The ALJ asked Dr. Pati to consider Sumpter's psychiatric records in light of the social

security "listing" criteria for affective disorders and anxiety disorders.  In questioning Dr. Pati,

ALJ stipulated that Dr. Pati should be "ignoring the treatment records and letter from Dr. Smith."

Tr. 1086.  The ALJ then suggested Dr. Pati should consider Dr. Sacks' notes.  *Id.*  Dr. Pati

subsequently stated that he did not agree with Dr. Smith's RFC statement.  Tr. 1088.

The ALJ noted that Dr. Pati rejected Dr. Smith's assessment.  Tr. 24.  This is erroneous.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that

justifies the rejection of the opinion of either an examining physician or a treating physician."

*Lester*, 81 F3d at 831.  The ALJ's findings regarding the conflicting opinions of Drs. Pati and

Smith should not be sustained.

The ALJ's questioning to Dr. Pati is also not based upon substantial evidence.  Because

the ALJ did not adequately reject Dr. Smith's opinion, for the reasons above, and because the

ALJ made no finding regarding Dr. Sacks, Dr. Pati's testimony regarding their opinions is not

based upon substantial evidence.  Expert testimony based upon such unsubstantiated evidence is

invalid.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-5 (9th Cir. 2001).  The ALJ's reliance

upon Dr. Pati's opinion should not be sustained.

### e. Failure to Develop The Record

Sumpter finally suggests the ALJ had a duty to develop the record regarding the duration

of Dr. Smith's diagnosis.  Pl. Opening Br. 32.  The ALJ's duty to develop the record is triggered

when ambiguities arise.  *Armstrong v. Commissioner*, 160 F.3d 587, 590 (9th Cir. 1998).  Here,

15 - FINDINGS AND RECOMMENDATION

Dr. Smith's notes clearly state that Sumpter did not meet PTSD diagnostic criteria in November

2001, but that he did meet the relevant criteria on in November 2003.  Tr. 333, 377, 750, 840.

The ALJ's analysis of these onset dates should be sustained, though this court notes that the ALJ's

analysis of Dr. Smith's opinion should not be sustained.

In summary, upon remand, the ALJ should address the complete opinions of Drs. Smith,

Carr, and Sacks under the proper legal standards.  The ALJ should not rely upon Dr. Pati's

testimony because it is not supported by the medical record.  The ALJ should also address

neurologist Dr. Campbell's opinion, which he did not discuss.

### III.  Lay Witness Testimony

Sumpter claims the ALJ improperly rejected lay witness testimony.  Pl. Opening Br. 36.

Sumpter specifically claims the ALJ made factual errors in addressing Sumpter's wife's

testimony.  Sumpter does not identify other specific witnesses, pointing only to exhibits 13-16E.

Pl. Opening Br. 36-37.  The Commissioner does not concede error in the ALJ's evaluation of this

testimony.

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d);

404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members

in a position to observe the claimant's symptoms and daily activities are competent to testify

regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The

value of lay witness testimony lies in their eyewitness observations, which may "often tell

whether someone is suffering or merely malingering." *Dodrill*, 12 F.3d at 918. The ALJ may not

reject such testimony without comment, but he may reject lay testimony inconsistent with

medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at

16 - FINDINGS AND RECOMMENDATION

512.  If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness.  *Nguyen*, 100 F.3d at 1467.

The ALJ cited testimony presented by Sumpter's wife, Elizabeth Sumpter.  Tr. 27.  The ALJ reiterated Elizabeth Sumpter's initial reports of Sumpter's ability to shop, visit friends, leave the house daily, attend movies, eat out, drive, prepare meals, run errands, and send his son to school.  Tr. 27.  The ALJ also noted that she stated, "he is a lot less active now" and that he is forgetful at home.  *Id.*

The ALJ then found that Elizabeth Sumpter's hearing testimony contradicted these limitations.  Tr. 28.  The ALJ specifically noted that Elizabeth Sumpter testified that her husband "is doing "childcare," working out of the home "for the last 12 months.""  *Id.* The ALJ concluded, "In any event, her testimony is not entirely credible and I give it no weight, as it is not only inconsistent with the evidence of record, but it is also not consistent with her own written Third Party Report of Activities of Daily Living (Ex. 3E)."  Tr. 28.  Finding lay testimony contradictory is an acceptable and germane reason for an ALJ to reject that testimony.  *Lewis*, 236 F.3d at 512.

The ALJ did not consider other lay witness testimony of record.  Between January 2002 and June 2003, Sumpter's ex-wife, Sumpter's former employer, and Sumpter's uncle each submitted letters to the record.  Tr. 186-89.  The ALJ did not reference these letters in his decision.  Silent omission of lay witness testimony regarding workplace limitations is not harmless.  *Stout v. Commissioner*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  Upon remand, the ALJ should consider such testimony presented in the relevant letters.

17 - FINDINGS AND RECOMMENDATION

**IV.    The ALJ's RFC Analysis**

Sumpter alleges the ALJ failed to perform a function-by-function RFC analysis. Pl. Opening Br. 26.  As noted above, the ALJ provided an exceptionally detailed functional analysis of Sumpter's RFC.  Tr. 27.  This court finds such an analysis in compliance with the Appeals Council's remand order.  However, this analysis should not be sustained because further proceedings are necessary to consider the additional medical evidence discussed above.

**V.    The ALJ's Step Five Finding**

Sumpter challenges the ALJ's finding that he can perform other work in the national economy, claiming the ALJ erred by relying upon unsupported vocational testimony.  Sumpter also alleges the ALJ erred in relying upon the VE's assessment of Dictionary of Occupational Titles skill levels.  Pl. Opening Br. 37-38.  The Commissioner does not address this argument.

Because further proceedings are necessary before a step five analysis can be performed, this court will not address step five arguments.  This court notes that "In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly rejected evidence, we consistently have remanded for further proceedings rather than payment of benefits." *Harman*, 211 F.3d at 1180.  Upon remand, the ALJ should obtain fresh vocational testimony citing the medical opinions above under the proper legal standards and excluding Dr. Pati's testimony.  The ALJ should then make appropriate step four findings.  If necessary, the ALJ should make alternative step five findings.

### <u>REMAND</u>

After finding the ALJ erred in his decision denying Sumpter's application for benefits, the court must determine the proper remedy.  This court has discretion to remand for further

proceedings or for immediate payment of benefits. *Harman*, 211 F.3d at 1178. The issue turns

on the utility of further proceedings. A remand for an award of benefits is appropriate when no

useful purpose would be served by further administrative proceedings or when the record has

been fully developed and the evidence is not sufficient to support the Commissioner's decision.

*Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited as true and an immediate award of

benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting

such evidence, (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find

the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (citing *Smolen*,

80 F.3d at 1292).

This is not presently the case. The testimony and opinions discussed above do not

conclusively establish disability based upon Social Security standards. *See Harman*, 211 F.3d at

1180. Upon remand, the ALJ should reassess Sumpter's credibility, specifically considering

Sumpter's work history in light of Wade Sumpter's testimony. The ALJ should also reconsider

Sumpter's symptom testimony. The ALJ should also consider Drs. Smith, Carr, and Sacks

under the proper legal standards. The ALJ should obtain and consider an independent mental

status evaluation, which he failed to do upon initial remand. The ALJ must then reconsider

Sumpter's RFC and obtain additional VE testimony incorporating any revised RFC findings.

## **RECOMMENDATION**

This court finds that the Commissioner's decision that Sumpter did not suffer from

disability and is not entitled to benefits under Title II of the Social Security Act is not based upon

correct legal standards and recommends the Commissioner's motion to remand be GRANTED for consideration of the evidence discussed above, an RFC calculation including any additional limitations established by that evidence, and VE testimony incorporating the revised RFC.

**_This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals_. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. _The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections_. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this ___8___ day of December, 2006.


_____/s/_____
John P. Cooney
United States Magistrate Judge